UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHIMENE E. ROFII,<br><br>           Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>           Defendant. | No. 12-cv-380-JPH<br><br>ORDER ON SUMMARY JUDGMENT |

BEFORE THE COURT are cross-motions for summary judgment. ECF No. 15, 18. The parties have consented to proceed before a magistrate judge. ECF No. 7. After reviewing the administrative record and the parties' briefs, the court **grants** defendant's motion for summary judgment, **ECF No. 18**.

**JURISDICTION**

Rofii protectively applied for disability insurance benefits (DIB) on April 14, 2009. She alleged disability beginning March 7, 2009 (Tr. 108-110). Benefits

ORDER - 1

were denied initially and on reconsideration (Tr. 73-75, 77-78). ALJ R.J. Payne held a hearing on July 27, 2010 (Tr. 45-70) and issued an unfavorable decision August 4, 2010 (Tr. 23-33). On April 24, 2012 the Appeals Council denied review (Tr. 1-6). The matter is now before the Court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review June 6, 2012. ECF No. 5.

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision and the briefs of the parties. They are only briefly summarized as necessary to explain the court's decision.

Rofii was 38 years old at onset and 40 at the hearing (Tr. 57). Her eye condition began in the early nineteen nineties and by 1996 was "getting pretty bad" (Tr. 66). She has a tenth grade education and has worked as an assistant manager, grocery store cashier and waitress (Tr. 58, 62, 145). Rofii alleges disability based on physical limitations (Tr. 137). She testified she can walk five steps before becoming dizzy (Tr. 59). She can stand only a few minutes (Tr. 59). Her spouse cooks, cleans, does laundry and takes care of the children (Tr. 62-63). She has a driver's license and drove in the last year (Tr. 64).

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c(a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423 (d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process or determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments

ORDER - 3

acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. §404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work, that plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual capacity (RFC) is considered. If plaintiff cannot perform past relevant work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a physical or mental impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful

ORDER - 4

activity and (2) a "significant number of jobs exist in the national economy" which plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20,

22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## ALJ'S FINDINGS

ALJ Payne found Rofii was insured through June 30, 2010 (Tr. 23, 25). At step one he found Rofii did not work at SGA levels after onset (Tr. 25). At steps two and three, the ALJ found Rofii suffers from back pain, superior oblique myokymia and rotary nystagmus of the left eye, impairments that are severe but do not meet or medically equal the severity of a listed impairment (Tr. 25-26). He found Rofii less than fully credible. He opined she could perform a range of medium work (Tr. 26, 28). At step four the ALJ found Rofii is able to perform her

past relevant work as a grocery store cashier (Tr. 31).  Alternatively, he found there are other jobs she can perform (Tr. 32-33)[At the hearing counsel stipulated that this is a step five case. Tr. 69.] Accordingly, the ALJ found Rofii has not been disabled from onset through the date she was last insured, June 30, 2010 (Tr. 33).

## ISSUES

Rofii alleges the ALJ erred when he analyzed the medical evidence and her credibility. ECF No. 16 at 6-10. The Commissioner responds that the ALJ's reasoning is free from harmful legal error and supported by the evidence. She asks the Court to affirm. ECF No. 18 at 20.

## DISCUSSION

**A. Credibility**

Rofii alleges the ALJ's reasons for finding her less than credible are not clear, convincing and supported by substantial evidence. ECF No. 16 at 8-10. The Commissioner disagrees. ECF No. 18 at 4-8.

Credibility determinations bear on evaluations of medical evidence when an ALJ is presented with conflicting medical opinions or inconsistency between a claimant's subjective complaints and diagnosed condition. *See Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005). It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v.*

ORDER - 7

*Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reason for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ relied on medical evidence inconsistent with subjective complaints, including examining doctor Snow's opinion that "nothing about the claimant's vision impairment 'would preclude her from doing some work.'" (Tr. 29, citing Tr. 320). The ALJ relied on Rofii's ability to work for years with her visual impairment (Tr. 28, 116, 138). He relied on activities inconsistent with claimed limitations, such as having a driver's license with no restrictions and driving in the past year. At some point between 2008 and 2009 [the report is undated], Rofii cared for her four year old son daily, cooked daily, including some "complete meals," shopped in stores, went out alone and did housework. (Tr. 28, 30, 64, 124-27).

The ALJ also considered Rofii's refusal to take medications to treat her

ORDER - 8

condition. She was referred to Donald Rowell, M.D., for a medication trial. On February 9, 2005, Rofii refused to be dilated for the exam (Tr. 205). She told Dr. Rowell she did not want to take medication . Dr. Rowell states:

> "The problem started 13 years ago ...  Now, [from] the time she wakes up, she sees double all day long ... The problem is making her sick, dizzy, lightheaded and [causing] headache ... Patient does not want to take any anti-epileptic medications at all. She'd rather take the surgical option. She thinks taking any medication would 'put her life on hold.' She is not able to go out and party." (Tr. 206).

The ALJ's reasons for the credibility determination are clear, convincing and supported by substantial evidence. A lack of supporting medical evidence is properly considered, with other factors, when evaluating credibility. *Burch v. Barnhart,* 400 F.3d 676, 680 (9th Cir. 2005);  *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002)(proper factors include inconsistencies between statements and conduct, and daily activities).  An unexplained or inadequately explained failure to follow recommended treatment casts doubt on a claimant's credibility. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

Rofii alleges because she admitted she took care of her four year old son, cooked easy meals and shopped for groceries, the "ALJ seemed to imply" this meant "she was capable of performing full-time work." ECF No. 16 at 10. To the

ORDER - 9

contrary, the ALJ notes Rofii's testimony that her vision is so disabling she spends her days laying down is inconsistent with the medical records and her own past statements of her activities. The ALJ also notes Rofii testified nothing could be done to treat her condition and she was told she would have to undergo several surgeries. Yet, as Dr. Rowell indicated, she refused to take medications to treat the condition (Tr. 28, 206). In 2009 Rofii's last employer indicated Rofii was given no special considerations or conditions. She was eager to get feedback, her work was of average quality and quantity, and she showed promise (Tr. 148-49). Substantial evidence supports the ALJ's credibility assessment.

### B. Medical evidence

Rofii alleges the ALJ erred when he weighed the medical evidence, specifically, by giving more credit to the testifying doctor's opinion than to her treating physicians, first, Jeremy Lewis, D.O., and later, Jeffrey Jamison, D.O. ECF No. 16 at 6-8. The Commissioner answers that the ALJ properly weighed all of the medical evidence. ECF No. 18 at 8-14.

The ALJ considered ophthamologist W. Benton Boone, M.D.'s testimony (Tr. 29-30, 47-57, 101-04). Dr. Boone testified Rofii suffers from superior oblique myokmia of the left eye. This results in a "constant roving nystagmus of the superior oblique muscle" and there is a vertical nystagmus when the left eye is rotated toward the nose in the right gaze. Dr. Boone opined Rofii should not work

around unprotected heights or hazardous machinery. She cannot drive commercially, should not climb ladders or balance, and should not do work requiring good bilateral depth perception due to dizziness. She may have intermittent periods of double or blurry vision (Tr. 48-51, 56-57). Dr. Boone notes Dr. Snow examined Rofii twice. Snow, an eye movement disorder specialist, examined Rofii on April 4 and June 25, 2009 (a month and roughly three months after onset, respectively). In September 2009 he opined there is nothing about the condition that would preclude work (Tr. 49-52, 260, 320). Dr. Boone points out that one of Rofii's treating doctors, Dr. Jamison is not an eye doctor, and incorrectly stated diplopia causes migraine headaches. Dr. Boone asserts that statement makes no sense because migraines headaches are not due to diplopia (Tr. 52-54).

Treating Dr. Jeremy Lewis, D.O. supplied a documentation request for medical/disability condition to the Washington Department of Social and Health Services on February 11, 2009, about a month before onset (Tr. 216-18). He opined Rofii has a limited ability to concentrate and to focus on "paperwork, computer activity" and could spend one to ten hours week preparing or looking for work. He opined she requires "special accommodations or considerations" due to "chronic diplopia, visual impairment and headaches secondary to visual strain" (Tr. 216-17). Most importantly, his treatment plan includes an opthamology

evaluation (Tr. 218).  By its very terms, Dr. Lewis's opinion was provisional, pending evaluation by a specialist. In August 2009 he again opined an opthamologist needed to give an opinion regarding disability (Tr. 266).

Treating doctor Jamison, D.O., opined on January 14, 2010 Rofii could not work due to vision impairment and migraine headache (Tr. 281). He opined she is "severely limited," defined as unable to lift two pounds or unable to stand or walk. He notes because she is pregnant, no new imaging studies can be performed (Tr. 282). On the same date he also indicated "the records I have so far really don't help me" and "I don't really have good handle on her diagnosis(s)" (Tr. 331). A brain MRI in June 2010 was normal (Tr. 335-36).

An ALJ may reject a treating doctor's contradicted opinion if he provides "specific and legitimate reasons" supported by substantial evidence. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007)(citations omitted). A physician's opinion of disability "premised to a large extent upon the claimant's own accounts of his symptoms and limitations" may be disregarded where those complaints have been "properly discounted." *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 10999), citing *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) and *Brawner v. Secretary of Health & Human Servs.*, 839 F.2d 432, 433-34 (9th Cir. 1988).  Here, the ALJ properly relied on the opinion of both the reviewing opthamologist, Dr. Boone, and examining specialist, Dr. Snow, that Rofii's

condition would not preclude all work, and on her diminished credibility, when he gave less weight to the treating doctors who were not eye specialists. *See e.g., Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996)(the opinions of a specialist about medical issues related to his or her area of specialization are given more weight than the opinions of a nonspecialist).

The ALJ's decision is supported by substantial evidence. The ALJ's findings must be upheld if, as here, they are supported by inferences reasonably drawn from the record. *See Tommasetti v. Astrue*, 533 F.3d 1050, 1038 (9th Cir. 2008).

Although Rofii alleges the ALJ should have weighed the evidence differently, the ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## CONCLUSION

After review the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**IT IS ORDERED**:

1. Defendant's motion for summary judgment, **ECF No. 18**, is **granted.**

2. Plaintiff's motion for summary judgment, ECF No. 15, is denied.

The District Executive is directed to file this Order, provide copies to counsel, enter judgment in favor of defendant, and **CLOSE** the file.

DATED this 7th day of November, 2013.

<u>s/James P. Hutton</u>

JAMES P. HUTTON

UNITED STATES MAGISTRATE JUDGE